H8A7RODP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              15 Cr. 445 (PAE)

5    JONATHAN RODRIGUEZ,

6                   Defendant.

7    ------------------------------x
                                              New York, N.Y.
8                                             August 13, 2017
                                              10:00 a.m.
9

10   Before:

11                    HON. PAUL A. ENGELMAYER
                                              District Judge
12

13                         APPEARANCES

14   JOON H. KIM
          Acting United States Attorney for the
15        Southern District of New York
     BY:  MAX NICHOLAS
16        JORDAN ESTES
          Assistant United States Attorneys
17
     JOYCE LONDON
18   BRUCE KOFFSKY
          Attorneys for Defendant
19

20

21

22

23

24

25

H8A7RODP

1          (Case called)

2          (In open court)

3          MR. NICHOLAS:  Good morning, your Honor.  Max Nicholas

4    and Jordan Estes for the government.

5          THE COURT:  Good morning, Mr. Nicholas.

6          Good morning, Ms. Estes.

7          MS. LONDON:  Joyce London and Bruce Koffsky for

8    Jonathan Rodriguez.  Good morning, your Honor.

9          THE COURT:  Good morning, Ms. London.

10         Good morning, Mr. Koffsky.

11         And, of course, good morning to you, Mr. Rodriguez.

12         And good morning as well to the members of the public

13    who are here today, who I take to be friends and family of

14    Mr. Rodriguez.  Thank you for coming.

15         You may all be seated.

16         All right.  I have been informed, Ms. London, that

17    your client wishes to plead guilty to Counts One and Two of the

18    superseding information in this case.  Is that correct?

19         MS. LONDON:  That is correct, your Honor.

20         THE COURT:  Mr. Rodriguez, is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  In a moment I'm going to go through my

23    series of questions to Mr. Rodriguez primarily and with

24    questions for counsel as we go through the allocution process.

25    I had one factual question which is quite small, but I thought

H8A7RODP

1   it best to take it up right at the beginning.

2              The case is unusual in one small respect, which is

3   there is a relationship to an anticipated plea of guilty in a

4   different district that's referenced.

5              Is there any expectation as to the sequence of

6   sentencings that is implicit in the agreement?  Or does it not

7   matter?

8              MR. NICHOLAS:  Your Honor, I don't think that the

9   sequence of sentencings matters.  I did talk to Ms. London

10  briefly before your Honor took the bench just about some

11  thoughts she has about the sentencing timeline and how to

12  arrange for the plea there.  But the sequence of where

13  Mr. Rodriguez gets sentenced first should not matter.

14             THE COURT:  There is a joint expectation that is

15  recited in the plea agreement along the lines that the sentence

16  here would be consecutive to that imposed in the Northern

17  District.  That is a sensible thing to say to the second judge

18  to impose sentencing across two cases.  It's a little trickier

19  sometimes without knowing what the sentence is in the other

20  district.  So I took it as perhaps implicit that you expected

21  the sentencing there to proceed first.

22             MR. NICHOLAS:  Understood, your Honor.  So my

23  understanding was that -- my expectation is that if the

24  sentencing in this case happened first and the court expressed

25  its understanding that as a 924(c) sentence it is consecutive

H8A7RODP

1    to any other sentence imposed, including the sentence

2    referenced in the Northern District case referenced in this

3    plea agreement, that that would be sufficient.

4           My understanding from the U.S. attorney's office in

5    the Northern District is that the sentence there on the plea

6    that Mr. Rodriguez is going to enter there to the (b)(1)(B)

7    will be consecutive to the sentence to the anticipated plea, so

8    I think either way will be OK.

9           THE COURT:  In other words, counsel in both districts

10   in both cases will be taking that common position, and the

11   issue that would be unknown to me if I sentence first is

12   whether the judge there heeds that.

13          MR. NICHOLAS:  Yes.  All I can speak to in the

14   Northern District is the government.  The government's position

15   there is going to be the same as that outlined in our plea

16   agreement here.

17          THE COURT:  I see.  But there is no plea agreement

18   reached in the Northern District, correct?

19          MR. NICHOLAS:  The plea agreement has not actually

20   been entered into yet, but my understanding is that there is an

21   agreement in principle.  It hasn't been entered yet, as is

22   reflected in the plea agreement here.

23          THE COURT:  Right.  So I guess the question is, just

24   playing out scenarios here, if something were to fall through

25   in the Northern District for whatever reason, what if any

H8A7RODP

1    impact does that have on the plea agreement here?

2              MR. NICHOLAS:  So, your Honor, my answer to that would

3    be that the condition that's imposed in our agreement is that

4    in order for the U.S. attorney's office here to dismiss open

5    counts, Mr. Rodriguez has to take the plea to the (b)(1)(B),

6    which is the five year mandatory minimum in Northern.

7              THE COURT:  I see.

8              MR. NICHOLAS:  Now that has to happen in order for the

9    sentencing to happen here.

10             So the parties in this agreement reflect as their

11   mutual understanding that the sentences would be consecutive,

12   but it's not the case that if the Judge somehow scuttled that,

13   we wouldn't then turn to Mr. Rodriguez and say, OK, well, the

14   judge there did something counter to what we thought in terms

15   of consecutive, so we're going to take back the plea.

16             If we knew that was going to happen, we would tell the

17   court that in a 3553(a) context for the appropriate sentence.

18   But the condition that is in the plea is that he take the five

19   year plea there before he is sentenced here.

20             THE COURT:  Put aside what the judge might do.

21             MR. NICHOLAS:  Right.

22             THE COURT:  Let's suppose -- just because there isn't

23   a written plea agreement in the Northern District yet -- there

24   have been plenty of cases where everyone expected a plea to

25   transpire and for one reason or another it didn't quite get

H8A7RODP

1    there.  So, let's suppose that Mr. Rodriguez pleads guilty as

2    anticipated here, and for some unexplained reason the plea

3    doesn't transpire in the Northern District.  I take it what

4    happens then is we proceed to sentencing in this case but you

5    don't dismiss the open counts here, and then you can go ahead

6    and prosecute him for those open counts.  And that, from your

7    perspective, is a significant disincentive for Mr. Rodriguez to

8    back out of the anticipated plan of his pleading guilty in the

9    Northern District.

10            MR. NICHOLAS:  That's exactly right.

11            THE COURT:  But it doesn't vitiate the plea here.

12            MR. NICHOLAS:  It does not vitiate the actual plea,

13   although it may cause a mutual desire to renegotiate the plea

14   here.  I could see a situation in which if something happened

15   in that case and the whole thing fell through, the plea here

16   would not be vitiated, and theoretically we would then proceed

17   to sentencing and we could still then prosecute for the RICO

18   and the (b)(1)(A) charge.  I could certainly see Ms. London

19   calling our office and saying let's have a replead with

20   different terms so that he -- I anticipate that could happen.

21   That's the purpose of the structure.

22            THE COURT:  Thank you.  That's very helpful.

23            Ms. London, again I wanted to make sure I had clarity

24   because of the unusual multi-district feature of this.  Are you

25   in agreement with everything that Mr. Nicholas has said?

H8A7RODP

1          MS. LONDON:  Yes, your Honor.  The agreement that the

2     parties have is that Mr. Rodriguez is agreeing to the

3     multi-district plea.

4          Going forward, I'm not quite sure of the timing,

5     because it has to be coordinated with the Northern District.

6     My preference would be that before Mr. Rodriguez gets shipped

7     up there, we could have his presentence interview done here,

8     because that would be a big time saver.  It may be possible for

9     him to enter a plea by video conference, in which case he would

10    then go up there for sentencing.

11         And I think that with a view towards avoiding these

12    kinds of situations, I think my preference would be to have him

13    sentenced in the Northern District so that we come back down

14    here and everything is finalized.  We're not looking to upset

15    any apple carts; we're not looking for problems.

16         THE COURT:  OK.  I think I understand exactly what

17    you're saying, and I'm happy to do whatever I can do to make

18    sure that the presentence interview here is conducted before he

19    goes there for the plea.

20         Were I the judge there, I would probably expect an in

21    person plea, because it's one of the few opportunities we

22    judges have to engage in a discussion with a defendant whom we

23    are destined to sentence.  And I cherish the opportunity to

24    spend any time I can having a conversation with the defendant,

25    just to take more stock of the defendant and the case, and I

H8A7RODP

1    expect my colleague there might feel the same way.  In any

2    event --

3              MS. LONDON:  And if he has to be, he would have to be

4    up there for sentencing, and my understanding is that

5    codefendants -- maybe all of the codefendants have been

6    sentenced in the matter, so the offense conduct of the

7    presentence report there is done.  So, if he does have to go up

8    there for the plea, he would stay up there and get sentenced

9    and then return back here.

10             THE COURT:  OK.

11             MS. LONDON:  We are looking to do it as expeditiously

12   as possible and to eliminate the discomfort of being

13   transported back and forth.

14             THE COURT:  Understood.  I am happy to do what I can

15   to facilitate those logistics.  The thrust though of my

16   communication with Mr. Nicholas was a little more substantive,

17   and I just want to make sure you are on the same page as to

18   that.

19             Specifically, regardless of what happens in the

20   Northern District, if Mr. Rodriguez enters a plea today,

21   developments in the Northern District would not be a basis for

22   overturning or rescinding the plea.  Is that correct?

23             MS. LONDON:  Yes, your Honor.  Yes.

24             THE COURT:  And in the event that Mr. Rodriguez does

25   not for some reason wind up pleading in the Northern District,

H8A7RODP

 1    is it correct that the government here is not obliged to

 2    dismiss the open counts in this case?

 3              In other words, put it differently, the obligation to

 4    dismiss the open counts turns on Mr. Rodriguez having entered

 5    the Northern District plea.  Is that your understanding?

 6              MS. LONDON:  That is my understanding, your Honor,

 7    yes.

 8              THE COURT:  OK, very good.

 9              And you have discussed with your client the

10    relationship, if you will, between the plea today in the

11    Southern District and the anticipated plea in the Northern

12    District?

13              MS. LONDON:  Yes, your Honor.  Yes, your Honor.

14              THE COURT:  OK.

15              MS. LONDON:  The two pleas have been an integral part

16    of our plea discussions, and certainly from the defense

17    perspective I was sort of the motivating force in saying these

18    two cases have to get wrapped up together.  So, I think from

19    our perspective and the government's perspective I don't think

20    there is any doubt about what our understanding is.

21              THE COURT:  And you appear to be in complete

22    agreement, and there is obvious wisdom to the approach you have

23    taken.  I just wanted to make sure that I had taken the

24    opportunity at the beginning to be sure that there is clarity

25    as to what happens if something falls through in the Northern

H8A7RODP

1    District, and I think I've gotten that.

2              Anything else you want to raise with respect to this

3    set of issues?

4              MS. LONDON:  No, your Honor.  I would just like to

5    have one moment with Mr. Rodriguez to make sure he does

6    understand everything we have been talking about and doesn't

7    have any questions.

8              THE COURT:  Of course.  I can understand because we

9    have now spent ten minutes in this discussion, some of it might

10   be confusing to a nonlawyer.  Take whatever time you need with

11   Mr. Rodriguez right now.

12             MS. LONDON:  Thank you.

13             Thank you, your Honor.  We're ready to proceed.

14             THE COURT:  OK.  Have you reviewed the discussion you

15   and I just had with your client?

16             MS. LONDON:  Yes, your Honor.

17             THE COURT:  OK.  While I will be asking him questions

18   later on about the plea agreement, are you confident that he

19   understands the terms as they relate to the relationship

20   between the Southern District plea and the anticipated Northern

21   District plea?

22             MS. LONDON:  I believe he does, your Honor.

23             THE COURT:  Very good.  All right.  Then we will

24   proceed forward.

25             All right.  Mr. Rodriguez, your counsel indicated a

H8A7RODP

1    few minutes ago that you intend today to plead guilty to Counts

2    One and Two of a superseding information in this case.  It

3    would be numbered superseding information S11 15 Crim. 445.  Is

4    that your intention today?  Do you wish to plead guilty to

5    those two counts?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Before I accept your guilty plea, I'm

8    going to ask you certain questions so that I can establish to

9    my satisfaction that you wish to plead guilty because you are

10   guilty and not for some other reason.  If you don't understand

11   any of my questions or you'd like a further opportunity to

12   consult with your attorneys, will you please let me know?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Are you able to speak and understand

15   English?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Smallman, would you kindly place the

18   defendant under oath.

19             (Defendant sworn)

20             THE COURT:  All right.  Mr. Rodriguez, do you

21   understand that you are now under oath and that if you answer

22   any of my questions falsely, your answers to my questions may

23   be used against you in another prosecution for perjury?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  What is your full name?

H8A7RODP

1            THE DEFENDANT:  Jonathan Rodriguez.

2            THE COURT:  How old are you?

3            THE DEFENDANT:  28.

4            THE COURT:  How far did you go in school?

5            THE DEFENDANT:  11th grade.

6            THE COURT:  Where was that?

7            THE DEFENDANT:  Alfred E. Smith.

8            THE COURT:  What borough is that in?

9            THE DEFENDANT:  Bronx, New York.

10            THE COURT:  Have you ever been treated or hospitalized

11   for any mental illness?

12            THE DEFENDANT:  No.

13            THE COURT:  Are you now or have you recently been

14   under the care of a doctor or a psychiatrist?

15            THE DEFENDANT:  No.

16            THE COURT:  Have you ever been hospitalized or treated

17   for addiction to any drugs or alcohol?

18            THE DEFENDANT:  No.

19            THE COURT:  In the past 24 hours, have you taken any

20   drugs, medicine or pills, or drunk any alcoholic beverages?

21            THE DEFENDANT:  No.

22            THE COURT:  Is your mind clear today?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Do you understand what is happening in

25   this proceeding?

H8A7RODP

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Do either counsel have any doubt as to the
 3    defendant's competence to plead at this time?
 4              MR. NICHOLAS:  No, your Honor.
 5              MS. LONDON:  No, your Honor.
 6              THE COURT:  All right.  Based on Mr. Rodriguez's
 7    responses to my questions, based on his demeanor as he appears
 8    before me, and as confirmed by counsel's independent
 9    assessments, I find that the defendant is competent to enter a
10    plea of guilty at this time.
11              Mr. Rodriguez, have you had a sufficient opportunity
12    to discuss your case with your attorneys?
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  Have you had a sufficient opportunity to
15    discuss the particular charges to which you intend to plead
16    guilty, any possible defenses to those charges, and the
17    consequences of entering a plea of guilty?
18              THE DEFENDANT:  Yes, your Honor.
19              THE COURT:  Are you satisfied with your attorney's
20    representation of you, including your attorney's representation
21    in connection with entering into a plea agreement?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  I am now going to explain certain
24    constitutional rights that you have.  You will be giving up
25    these rights if you enter a plea of guilty.
```

H8A7RODP

1            Under the Constitution and laws of the United States,

2      you are entitled to a speedy and a public trial by a jury on

3      the charges contained in the information.  Do you understand

4      that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  At that trial you would be presumed to be

7      innocent, and the government would be required to prove you

8      guilty by competent evidence and beyond a reasonable doubt

9      before you could be found guilty.  You would not have to prove

10     that you were innocent, and a jury of 12 people would have to

11     agree unanimously that you were guilty.  Do you understand

12     that?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  At that trial, and at every stage of your

15     case, you would be entitled to be represented by an attorney,

16     and if you could not afford one, one would be appointed to

17     represent you free of charge.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  During a trial the witnesses for the

20     government would have to come to court and testify in your

21     presence, and your lawyer could cross-examine the witnesses for

22     the government, object to evidence offered by the government

23     and, if you desired, issue subpoenas, offer evidence and compel

24     witnesses to testify on your behalf.  Do you understand that?

25           THE DEFENDANT:  Yes.

H8A7RODP

1          THE COURT:  At a trial, although you would have the

2     right to testify if you chose to do so, you would also have the

3     right not to testify, and no inference or suggestion of guilt

4     could be drawn from the fact that you did not testify, if that

5     was what you chose to do.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  At trial, the government would have to

8     prove each and every part or element of a charge beyond a

9     reasonable doubt for you to be convicted of that charge.  Do

10    you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that if you were

13    convicted at a trial, you would have the right to appeal that

14    verdict?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Even at this time right now, even as you

17    are in the process of entering this plea, you have the right to

18    change your mind, plead not guilty and go to trial.  Do you

19    understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  If you plead guilty and I accept your

22    plea, you will give up your right to a trial and the other

23    rights that I have just described, there will be no trial, and

24    I will enter a judgment of guilty and sentence you on the basis

25    of your guilty plea, after considering the submissions relating

H8A7RODP

```
 1   to sentencing that I receive from you and the government, as
 2   well as a presentence report that I will receive from the
 3   probation department.  Do you understand that?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  If you plead guilty, you will also give up
 6   your right not to incriminate yourself, because I will ask you
 7   questions today about what you did in order to satisfy myself
 8   that you are guilty as charged.  Do you understand that?
 9            THE DEFENDANT:  Yes.
10            THE COURT:  Mr. Rodriguez, have you received a copy of
11   the information containing the charges against you?
12            THE DEFENDANT:  Yes.
13            THE COURT:  Have you read it?
14            THE DEFENDANT:  Yes.
15            THE COURT:  And have you had an opportunity to discuss
16   it with your attorneys?
17            THE DEFENDANT:  Yes.
18            THE COURT:  And do you wish me to read it out loud
19   here today?
20            THE DEFENDANT:  No.
21            THE COURT:  OK.  Do you understand that in Count One
22   you are charged with on or about September 28, 2008 in this
23   District, during and in relation to a crime of violence for
24   which you may be prosecuted in a court of the United States,
25   namely murder in aid of racketeering in relation to the murder
```

1    of Brandon Howard, you are charged with in relation to that

2    knowingly using and carrying a firearm, and in furtherance of

3    that crime of violence knowingly possessing a firearm, all in

4    violation of the statute entitled 18 United States Code,

5    Section 924(c)(1)(A)(1).  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  OK.  And do you understand that in Count

8    Two you are charged with between in or about 2006 and in or

9    about December 2015, and on occasions other than the September

10   28, 2008 occasion that's covered in Count One, during and in

11   relation to the crime of violence, specifically your

12   participation in 18 Park as part of a racketeering conspiracy,

13   and during and in relation to a drug trafficking crime, namely

14   a conspiracy to distribute and possess with intent to

15   distribute heroin, cocaine base, cocaine and marijuana, you are

16   charged in connection with those crimes -- the racketeering

17   conspiracy and the narcotics conspiracy -- with knowingly using

18   and carrying firearms and knowingly possessing firearms which

19   were discharged, and also aiding and abetting the same.  Do you

20   understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  That was a long description.  Let me slow

23   that down and just make sure you understand what the essence of

24   the charge is in that second count.

25             The premise of the second count was that you knowingly

H8A7RODP

1    used and carried and possessed firearms which were discharged

2    and that you did so in relation to two crimes:  One was the

3    crime of participating in a racketeering conspiracy in

4    connection with 18 Park.  The second was the crime of

5    participating in a narcotics conspiracy to distribute and to

6    possess with intent to distribute the drugs I listed.  Do you

7    understand that's the essence of the charge, that you used,

8    carried and possessed a firearm to support those two separate

9    offenses?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  OK.  All right.

12             Do you understand that you will be separately

13   sentenced on each of those two counts?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.

16             Do you understand that the maximum possible penalty on

17   Count One is life imprisonment?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand that the mandatory

20   minimum term of imprisonment you could receive on Count One is

21   five years' imprisonment?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand that the maximum

24   possible penalty on Count Two is life imprisonment?

25             THE DEFENDANT:  Yes.

H8A7RODP

<table>
<tbody>
<tr><td>1</td><td>THE COURT:  And do you understand that the mandatory</td></tr>
<tr><td>2</td><td>minimum term of imprisonment on Count Two is 25 years'</td></tr>
<tr><td>3</td><td>imprisonment?</td></tr>
<tr><td>4</td><td>THE DEFENDANT:  Yes, your Honor.</td></tr>
<tr><td>5</td><td>THE COURT:  And do you understand that I must order</td></tr>
<tr><td>6</td><td>you to serve those two sentences consecutively?</td></tr>
<tr><td>7</td><td>THE DEFENDANT:  Yes.</td></tr>
<tr><td>8</td><td>THE COURT:  And, therefore, do you understand that the</td></tr>
<tr><td>9</td><td>total mandatory minimum sentence across the two counts is 30</td></tr>
<tr><td>10</td><td>years' imprisonment and the maximum is life imprisonment?</td></tr>
<tr><td>11</td><td>THE DEFENDANT:  Yes, your Honor.</td></tr>
<tr><td>12</td><td>THE COURT:  Do you understand that the maximum fine</td></tr>
<tr><td>13</td><td>for each count may reach as high as $250,000?</td></tr>
<tr><td>14</td><td>THE DEFENDANT:  Yes.</td></tr>
<tr><td>15</td><td>THE COURT:  Now, for pleading guilty to each of Counts</td></tr>
<tr><td>16</td><td>One and Two you may receive a term of up to five years of what</td></tr>
<tr><td>17</td><td>is called supervised release.  Do you understand that?</td></tr>
<tr><td>18</td><td>THE DEFENDANT:  Yes.</td></tr>
<tr><td>19</td><td>THE COURT:  Let me take a moment and explain what</td></tr>
<tr><td>20</td><td>supervised release is.  Supervised release means that you will</td></tr>
<tr><td>21</td><td>be subject to monitoring when you are released from prison.</td></tr>
<tr><td>22</td><td>There are terms of supervised release with which a person must</td></tr>
<tr><td>23</td><td>comply.  If you don't comply with them, you can be returned to</td></tr>
<tr><td>24</td><td>prison without a jury trial for all or part of the term of</td></tr>
<tr><td>25</td><td>supervised release imposed by the court.  Under those</td></tr>
</tbody>
</table>

H8A7RODP

1    circumstances, you would not be given any credit towards that

2    term for the time you served in prison as a result of your

3    sentence for these crimes, nor would you necessarily be given

4    any credit towards that term for any time you already spent on

5    post-release supervision.  Do you understand that?

6                THE DEFENDANT:  Yes.

7                THE COURT:  For pleading guilty to each of these

8    crimes, you will be required to pay a mandatory $100 special

9    assessment for a total of $200.  Do you understand that?

10                THE DEFENDANT:  Yes.

11                THE COURT:  For pleading guilty to these crimes, you

12   may be required to pay restitution to any person injured as a

13   result of your criminal conduct.  Do you understand that?

14                THE DEFENDANT:  Yes.

15                THE COURT:  For pleading guilty to these crimes, you

16   may be compelled to forfeit any and all property constituting

17   and derived from proceeds obtained by your criminal conduct.

18   Do you understand that?

19                THE DEFENDANT:  Yes.

20                THE COURT:  Do you also understand that if I accept

21   your guilty plea and adjudge you guilty, that may deprive you

22   of valuable civil rights, such as the right to vote, the right

23   to hold public office, the right to serve on a jury and the

24   right to possess any kind of firearm?

25                THE DEFENDANT:  Yes, your Honor.

H8A7RODP

1          THE COURT:  Are you a United States citizen?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, under current law there are

4    sentencing guidelines as well as other factors set forth in the

5    sentencing statutes that judges must consider in determining a

6    sentence.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you spoken with your attorney about

9    the sentencing guidelines and those other factors?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that the court will not

12   be able to determine the guideline range that will form a part

13   of my determination of what a reasonable sentence will be in

14   your case until after a presentence report has been prepared

15   and until after you and your attorney and the government all

16   have the chance to challenge any of the facts reported in that

17   report by the probation office?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that although the

20   parties in the plea agreement have agreed that the sentencing

21   guidelines call for a term of 30 years' imprisonment here, that

22   agreed-upon range is not binding on the probation department

23   and it's not binding on the court?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that even after the

H8A7RODP

1   court has determined what guideline range the sentencing

2   guidelines recommend, the court has the discretion under the

3   current law to impose a sentence that is higher than the one

4   suggested by the guidelines?

5               THE DEFENDANT:  Yes.

6               THE COURT:  And do you understand that if the

7   guidelines recommend a sentence that is above the mandatory

8   minimum here, the court would also have the discretion to

9   impose a sentence below the sentence recommended by the

10  guidelines?

11              THE DEFENDANT:  Yes.

12              THE COURT:  OK.  Do you understand that if your

13  attorneys or anyone else has attempted to predict what your

14  sentence will be, their prediction could be wrong?

15              No one -- not your attorneys, not the government's

16  attorney -- no one can give you any assurance of what your

17  sentence will be, because I will be deciding your sentence, and

18  I'm not going to do that now, and I really can't do that now.

19  Instead, I'm going to wait until I receive the sentencing

20  letters I'm destined to receive from the defense and the

21  government.  I'm going to wait until I receive the presentence

22  report prepared by the probation department.  I'm going to

23  review those materials very thoughtfully and carefully, and I'm

24  going to do my own independent calculation of what the

25  sentencing guidelines recommend.  But, most of all, I'm going

H8A7RODP

1    to determine what a reasonable sentence is for you based on all

2    of the factors contained in the sentencing statute, which is

3    known as Section 3553(a).

4            Do you understand all that?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Have you discussed these issues and the

7    overall sentencing process with your attorneys?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Even if your sentence is different from

10   what your attorneys or anyone else has told you it might be,

11   even if it's different from what you expect, even if it's

12   different from the recommended range that's set forth in your

13   plea agreement with the government, you would still be bound by

14   your guilty plea and you would not be allowed to withdraw your

15   plea of guilty.  Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Has anyone threatened you, or forced

18   you -- excuse me.

19           Has anyone threatened you or anyone else, or forced

20   you in any way to plead guilty?

21           THE DEFENDANT:  No.

22           THE COURT:  Now, has there been a plea agreement

23   entered into between you and your counsel and counsel for the

24   government?

25           THE DEFENDANT:  Yes.

H8A7RODP

1          THE COURT:  Counsel have handed up a signed plea

2     agreement.

3          Mr. Nicholas, I see here your signature on page 7.  Is

4     that your signature?

5          MR. NICHOLAS:  It is, your Honor.

6          THE COURT:  And I see here the signature of Micah

7     Smith, the chief of the Violent and Organized Crime Unit.  Is

8     that his signature?

9          MR. NICHOLAS:  Yes.

10          THE COURT:  Ms. London, I see your signature here

11     dated today.  Is that your signature?

12          MS. LONDON:  Yes.

13          THE COURT:  Mr. Rodriguez, I see here your signature

14     dated today.  Is that in fact your signature?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you read this agreement before you

17     signed it?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you discuss it with your attorneys

20     before you signed it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you believe you understood the

23     agreement at the time you signed it?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Did you willingly sign the agreement?

H8A7RODP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did anyone force you to sign the

3    agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you have any agreement with the

6    government about your plea or your sentence that has been left

7    out of this written agreement?

8          THE DEFENDANT:  No.

9          THE COURT:  All right.  Mr. Nicholas, would you kindly

10   summarize the material terms of the plea agreement.

11         MR. NICHOLAS:  Yes, your Honor.  As your Honor has

12   noted, the mandatory minimum sentence based on the two counts

13   combined that Mr. Rodriguez has agreed to plead guilty to is 30

14   years.  And as part of the plea agreement, the parties have

15   agreed that the government's dismissal of any open counts

16   against Mr. Rodriguez on the S10 indictment -- which includes

17   racketeering conspiracy and narcotics conspiracy -- the

18   dismissal for those counts is contingent upon Mr. Rodriguez

19   entering into a plea agreement whereby he pleads to an 841

20   (b)(1)(B) count in a pending Northern District case.  The

21   Northern District indictment to which that relates is attached

22   as Exhibit A to this plea agreement.  So that we expect that

23   the mandatory minimum for the two pleas combined would be 35

24   years.

25         The defendant pursuant to this agreement waives any

H8A7RODP

1    defense as to Count One here that may have been available on

2    the grounds of statute of limitations.

3              In consideration of the defendant's plea, he will not

4    be further prosecuted by this office for his possession of a

5    firearm on or about September 28, 2008 in connection with the

6    murder of Brandon Howard, or his possession, use and carrying

7    of firearms between in and about 2006 and 2016 in connection

8    with his membership and activities in the gang 18 Park or the

9    narcotics conspiracy that's spelled out with the drugs spelled

10   out in the information.

11             The parties have agreed that the guidelines for this

12   plea are 30 years.  Again, that doesn't take into account the

13   five years that we expect to be appended from the Northern

14   District case.

15             The parties have agreed in the plea agreement that

16   with respect to Count One of this plea Mr. Rodriguez on or

17   about September 28, 2008 knowingly and willfully murdered

18   Brandon Howard by shooting him several times -- that was in the

19   Bronx -- and they have agreed that Mr. Rodriguez will verbally

20   acknowledge that today.

21             With respect to Count Two, the broader firearms count,

22   there is a list on the bottom of page 3 of the agreement going

23   to the top of page 4 of various activities in which Mr.

24   Rodriguez engaged in connection with 18 Park that he has agreed

25   to acknowledge.  I will go through them very, very briefly.

H8A7RODP

1   They include making other firearms available to members of 18

2   Park, participating in an assault and nonfatal stabbing at a

3   barber shop with 18 Park, a nonfatal shooting in 2015, the

4   distribution of narcotics and being a leader in 18 Park.  And

5   Mr. Rodriguez will acknowledge those activities as part of his

6   plea agreement.

7            The parties agree that the defendant can make

8   arguments at sentencing about -- equitable arguments -- about

9   his being incarcerated by the Bronx County district attorney's

10  office in connection with the Brandon Howard murder after 2008.

11           And the parties agree further that the defendant will

12  not file a direct appeal or bring a collateral challenge in his

13  sentence if it is at the guidelines level of 30 years -- which

14  is also the mandatory minimum -- that the parties expect.

15           Finally, the court asked Mr. Rodriguez if he was a

16  citizen and he said that he is a citizen.  That's our

17  understanding as well.  But Mr. Rodriguez acknowledges as part

18  of the plea agreement that if he were not a citizen, he would

19  likely face adverse consequences with respect to -- he would be

20  deported most likely.

21           And there have been no promises outside the plea

22  agreement.  Those are the material terms.

23           THE COURT:  Thank you, Mr. Nicholas.  I appreciate it.

24           Ms. London, are you in agreement with the summary of

25  the terms as rendered by Mr. Nicholas?

H8A7RODP

1          MS. LONDON:  Yes, your Honor.

2          THE COURT:  Mr. Rodriguez, did you hear and understand

3     Mr. Nicholas as he reviewed those terms?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  OK.  I want to just highlight several

6     things for you.  I want to make sure first of all you

7     understand that even though the parties have reached their

8     agreement as to how the sentencing guidelines apply here, I

9     just want to underscore that that stipulation, although it

10    binds the government and the defense, doesn't bind the court

11    and the probation department.  We still have to make our own

12    independent calculations as to what the sentencing guidelines

13    recommend here.  Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  OK.  The other thing I want to make sure

16    you understand is that under the plea agreement there are

17    certain facts that you are admitting that are set forth in the

18    plea agreement, and they include your role in the murder of

19    Brandon Howard.  You have read the plea agreement, correct?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Are all the facts that are set forth in

22    that plea agreement that are agreeing to admit, are all those

23    things true?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And are you prepared to admit to those,

29

1   all of the ones that are set out in the plea agreement, today?

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  Has anyone made any promise or

4   done anything other than what is contained in the plea

5   agreement to induce you to plead guilty?

6           THE DEFENDANT:  No.

7           THE COURT:  Has anyone made a promise to you as to

8   what your sentence will be?

9           THE DEFENDANT:  No.

10          THE COURT:  OK.  In a moment I'm going to ask you what

11  you did that makes you believe you are guilty of the offenses

12  in Counts One and Two of the information.  I neglected,

13  however, earlier, just to address the issue of your waiver of

14  indictment, and I'm just going to come back to that.

15          The document that contains Counts One and Two, which I

16  described to you earlier, is called an information.  It has

17  been issued by the United States attorney.  These are serious

18  crimes, and you have a constitutional right to require the

19  government to present evidence to a grand jury, which might or

20  might not vote to charge you with these crimes.  Do you

21  understand what a grand jury is?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If the grand jury did vote to charge you

24  with these crimes, the charges would be contained in a document

25  called an indictment rather than an information.  An indictment

H8A7RODP

```
1    would be signed by the United States attorney and the grand
2    jury foreperson.  Do you understand that?
3              THE DEFENDANT:  Yes.
4              THE COURT:  Do you wish to give up your right to be
5    charged by a grand jury?
6              THE DEFENDANT:  Yes.
7              THE COURT:  All right.  And counsel have handed up a
8    signed waiver of indictment form.  Ms. London, is this your
9    signature on the form?
10             MS. LONDON:  Yes, your Honor.
11             THE COURT:  Dated today?
12             MS. LONDON:  Yes.
13             THE COURT:  And, Mr. Rodriguez, is this your signature
14   on the form dated today?
15             THE DEFENDANT:  Yes, your Honor.
16             THE COURT:  And it has been witnessed by Mr. Smallman
17   my deputy.  When you signed this form, Mr. Rodriguez, did you
18   understand that you were acknowledging your willingness to give
19   up your right to be indicted by a grand jury?
20             THE DEFENDANT:  Yes, your Honor.
21             THE COURT:  All right.  I find a knowing and voluntary
22   waiver of the defendant's right to be indicted by a grand jury.
23             And with that, I want to ask you to tell me in your
24   own words what you did that makes you believe you are guilty of
25   the charge in the indictment.
```

H8A7RODP

1          Before I do, let me just ask Mr. Nicholas just to set

2     forth, please, the elements of the offenses.

3          MR. NICHOLAS:  Your Honor, each offense is an alleged

4     violation of Title 18 U.S. Code Section 924(c).  That statute

5     makes it a crime to use or carry a firearm during and in

6     relation to, or possess a firearm in furtherance of, either a

7     crime of violence or certain narcotics offenses.  Here the

8     crimes of violence starting with Count One are a murder in aid

9     of racketeering, and the murder is the murder of Brandon Howard

10    in the Bronx on September 28, 2008.  The racketeering

11    conspiracy is the conspiracy of 18 Park.

12         For Count Two, the predicate for the firearms offense,

13    the crime of violence is racketeering conspiracy with respect

14    to the enterprise of 18 Park.  The narcotics offense is a

15    conspiracy to distribute and possess with intent to distribute

16    heroin, crack cocaine and marijuana.

17         And with respect to Count Two only, it is also charged

18    that firearms that Mr. Rodriguez either possessed or aided and

19    abetted the possession of were discharged.

20         THE COURT:  OK.  Ms. London, are you in agreement with

21    that summary of the elements of the two offenses?

22         MS. LONDON:  Yes, your Honor.

23         THE COURT:  Mr. Rodriguez, did you hear and understand

24    Mr. Nicholas as he described those elements?

25         THE DEFENDANT:  Yes.

H8A7RODP

1          THE COURT:  OK.  I see you have a piece of paper.  I

2     take it you are proposing to read aloud your explanation of

3     what you did that makes you believe you are guilty of those

4     offenses?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  That's fine.  Is that something you have

7     prepared in coordination with your lawyers?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Before you do, I just want to make sure

10    that you have read it carefully and that you are confident that

11    everything in there is accurate.  Is it?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Go ahead.

14         THE DEFENDANT:  From around 2006 to 2008 and from 2012

15    and 2015 I was a member of a group known as 18 Park.  As a

16    group I and other 18 Park members were involved in various

17    crimes of violence such as murders, attempted murders and

18    assault against other rival gangs.

19         THE COURT:  Sorry.  I will ask you to slow down for my

20    benefit and the court reporter.  Go ahead.

21         THE DEFENDANT:  Read it over?

22         THE COURT:  No, that's OK, but going forward just read

23    it a little more slowly.

24         THE DEFENDANT:  On September 28, 2008, in the Bronx, I

25    possessed a gun in connection with my membership at 18 Park.  I

H8A7RODP

1   shot and killed Brandon Howard.  I killed him to maintain my

2   standing in 18 Park.  I knew what I was doing was illegal.

3          Count Two:  At various times between May 2012 and 2015

4   in the Bronx I possessed a firearm which I brandished and

5   discharged in connection with assaults that were in furtherance

6   of my membership in 18 Park in connection with the distribution

7   of heroin, cocaine, cocaine base and marijuana with other 18

8   Park members.  I knew what I was doing was illegal.

9          THE COURT:  All right, thank you.

10          When you did all of these acts, the ones underlying

11   Count One and the ones underlying Count Two, did you know that

12   what you were doing was wrong?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you know you were committing a crime?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Can the government make a proffer as to

17   the interstate commerce element of the two statutes -- the

18   jurisdictional element of the statutes?

19          MR. NICHOLAS:  Yes, your Honor.  The government can

20   proffer that the narcotics that 18 Park distributed came in

21   part from out of state, and so that does satisfy any interstate

22   commerce element.

23          THE COURT:  Well, the interstate commerce element for

24   the offense relates to the gang, does it not, to the

25   racketeering element?

H8A7RODP

1          MR. NICHOLAS:  Yes.

2          THE COURT:  Can you proffer how the gang's activities

3    affected interstate commerce?

4          MR. NICHOLAS:  Yes, your Honor.  The gang distributed

5    narcotics -- 18 Park distributed narcotics which traveled out

6    of state, and obtained narcotics from out of state and took

7    them out of state.  That satisfies the interstate commerce.

8          THE COURT:  Do all counsel agree that the defendant's

9    allocution is sufficient to establish that 18 Park was an

10   enterprise within the meaning of the racketeering statutes?

11         MR. NICHOLAS:  Your Honor, I do agree.  I think Mr.

12   Rodriguez said that he was a member of a gang called 18 Park

13   that agreed to engage in murders and attempted murders.  I do

14   think that satisfies the statute.

15         THE COURT:  Ms. London?

16         MS. LONDON:  Yes, your Honor.

17         THE COURT:  And, Mr. Rodriguez, did 18 Park also

18   participate -- and I think you've said this, but just to

19   confirm -- in the sale and distribution of various narcotics,

20   including marijuana, crack, cocaine and heroin?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  All right.  Does government counsel agree

23   that there is a sufficient factual predicate for a guilty plea?

24         MR. NICHOLAS:  Your Honor, we do with respect to the

25   statute.  I would just note that under the plea agreement, as

35

H8A7RODP

1    your Honor noted a few moments ago when allocuting Mr.

2    Rodriguez, Mr. Rodriguez has agreed to acknowledge the specific

3    conduct that's listed at the bottom of page 3 going to the top

4    of page 4.  He already acknowledged the murder of Brandon

5    Howard, but there are five bullet points there.

6              THE COURT:  All right.  Is it necessary for me to read

7    them aloud, or is it enough to reference the portion of the

8    agreement?

9              MR. NICHOLAS:  I think it's enough to reference the

10   portion of the agreement.

11             THE COURT:  Mr. Rodriguez, if you turn on the plea

12   agreement to page 3, do you see there are four bullet points

13   towards the bottom of the page, four black dots?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And after each of them is an account of

16   criminal activity.  And there is a fifth one on the top of page

17   4.  Do you see that as well?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  OK.  Do you agree that all of the

20   statements there are true?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Do you agree that you engaged in the

23   conduct that is described in each of those statements?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  OK.  With that, does government counsel

H8A7RODP

1    agree both that there is a sufficient factual predicate for a

2    guilty plea and that the defendant has acknowledged the conduct

3    that under the plea agreement he is obliged to acknowledge?

4              MR. NICHOLAS:  Yes, your Honor.

5              THE COURT:  Defense counsel, do you agree there is a

6    sufficient factual predicate for a guilty plea?

7              MS. LONDON:  Yes, your Honor.

8              THE COURT:  Ms. London, do you know of any valid

9    defense that would prevail at trial or any reason why your

10   client should not be permitted to plead guilty?

11             MS. LONDON:  No, your Honor.

12             THE COURT:  Are you pleading guilty voluntarily and of

13   your own free will and because you are in fact guilty?  Yes,

14   sorry, Mr. Rodriguez.

15             THE DEFENDANT:  I'm pleading guilty.

16             THE COURT:  Are you pleading guilty today of your own

17   free will and because you are in fact guilty?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  Can government counsel

20   represent that had the case gone to trial it had sufficient

21   evidence on each element to establish a conviction?

22             MR. NICHOLAS:  Yes, your Honor.

23             THE COURT:  Mr. Rodriguez, because you acknowledge

24   that you are in fact guilty as charged in the information,

25   because I'm satisfied that you know of your rights, including

H8A7RODP

1    your right to go to trial, because I'm satisfied that you are

2    aware of the consequences of your plea, including the sentence

3    that may be imposed, and because I find that you are

4    voluntarily pleading guilty, I accept your guilty plea and

5    enter a judgment of guilty on the two counts to which you have

6    pled guilty.

7             Now, the next step in your case -- putting aside

8    activity in the Northern District of New York -- the next event

9    that will occur in this case here in this district will be

10   sentencing.  The probation department is going to want to

11   interview you in connection with the presentence report that it

12   will prepare, and I had a brief discussion about the timing of

13   that earlier with Ms. London.

14            If you choose to speak with the probation department,

15   please make sure that anything you say to them is truthful and

16   accurate.  I read those reports very carefully, and they are

17   often quite important to me in determining what a reasonable

18   sentence is in a particular case.

19            You and your counsel have a right to examine the

20   report and to comment on it at the time of sentencing.  I urge

21   you to read it and to discuss it with your attorneys before

22   sentencing.  If there are any mistakes in the presentence

23   report, please point them out to your lawyers so that they can

24   bring them to my attention before sentencing.

25            Will you agree to do that?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  All right.  Ms. London, given the

3    mandatory minimums here, I take it your client is not seeking

4    an expedited sentence?

5           MS. LONDON:  No, your Honor.

6           THE COURT:  All right.  I'm obliged to ask.

7           All right.  The sentencing then is set for, shall we

8    say, Tuesday, December 12 at 10 a.m, understanding that there

9    may be a reason to seek to adjourn it, depending on the pace of

10   events in the Northern District?

11          MS. LONDON:  Yes, your Honor.

12          THE COURT:  OK.  I will set sentencing down for

13   December 12 at 10 a.m.

14          Ms. London, you must arrange for your client to be

15   interviewed by the probation department within the next two

16   weeks.  The government is directed to provide its case summary

17   to the probation department within the next two weeks.

18          Mr. Nicholas, can you make sure that the defendant is

19   not transferred to the Northern District between now and the

20   time when within two weeks his probation department interview

21   takes place?

22          MR. NICHOLAS:  Yes.

23          THE COURT:  OK.  In connection with sentencing,

24   defense submissions are due two weeks before sentencing; the

25   government's submission is due one week before.

H8A7RODP

```
 1              As to my procedures with respect to the filing of

 2    sentencing submissions with the clerk of court, they are

 3    customary for the district, and they are set forth on the

 4    Southern District website.

 5              Is there anything further from the government?

 6              MR. NICHOLAS:  No.  Thank you, your Honor.

 7              THE COURT:  Anything further from the defense?

 8              MS. LONDON:  No.  Thank you, your Honor.

 9              THE COURT:  Thank you.  We stand adjourned.

10              (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```