UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JONATHAN RODRIGUEZ,

Defendant.

15 Cr. 445-2 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received a *pro se* motion from defendant Jonathan Rodriguez, and a motion from his counsel, seeking Rodriguez's compassionate release from Federal Correctional Institution ("FCI") Butner Medium II, in North Carolina, pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 1195 ("Pro Se Mtn."); Dkt. 1250 ("Def. Mtn."). For the reasons that follow, the Court denies the motions.

I.    Background

A.    Prosecution and Sentencing

Rodriguez was a leader of 18 Park, a violent gang that dominated and terrorized the Patterson Houses housing project in the South Bronx, including during the years 2008–2015. The gang sold a formidable amount of drugs, predominantly heroin, crack cocaine, and cocaine. The gang also engaged in acts of violence, including two murders, multiple attempted murders, and numerous shootings, with the aim of protecting its territory from rival neighborhood gangs. Rodriguez's most significant crime in connection with 18 Park, by far, was his murder of Brandon Howard, age 19. On September 28, 2008, Rodriguez, after stalking Howard, pulled Howard out of a party and into a hallway, pulled out a gun, and shot Howard multiple times, killing him. During the killing, members of 18 Park stood guard nearby. On July 20, 2012,

Rodriguez participated with others in 18 Park in stabbing and beating up a rival gang member at a barbershop. And in October 2015, Rodriguez shot a rival drug dealer in the leg in front of a deli on "Spanish Block," a thoroughfare on which much of 18 Park's drug dealing occurred. Rodriguez also participated in 18 Park's drug dealing. *See generally* Dkt. 837 ("Presentence Report" or "PSR") ¶¶ 7–9, 24, 42–47.

On December 9, 2015, a superseding Indictment naming Rodriguez and 25 other members or affiliates of 18 Park was returned. Dkt. 12. Of the 26 defendants, ultimately 22 pled guilty and four were convicted, in whole or part, at trial. On August 10, 2017, Rodriguez pled guilty to two counts: (1) a firearms charge connected to Howard's murder, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count One"); and (2) a firearms charge connected to both a racketeering conspiracy involving 18 Park and a drug trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i),(ii), and (iii), 924(c)(1)(C)(i), and 2 ("Count Two"). Under the law at the time, the counts carried mandatory minimum terms, which were required to run consecutively, of five years' and 25 years' imprisonment, respectively. Rodriguez's sentencing guidelines range was the mandatory minimum sentence of 360 months' (30 years') imprisonment. PSR ¶ 79. On July 25, 2018, the Court sentenced Rodriguez to a term of 30 years' imprisonment. The sentence was to run consecutively to a separate five-year term of imprisonment, previously imposed by the U.S. District Court for the Northern District of New York, in which Rodriguez pled guilty to one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

**B.    Section 2255 Petition**

On July 24, 2020, Rodriguez, *pro se*, petitioned for relief pursuant to 28 U.S.C. § 2255. Dkt. 1118. On August 18, 2020, the Court denied the petition, finding meritless Rodriguez's two bases for relief. Dkt. 1132 ("2255 Dec'n").

Rodriguez had, first, argued that his conviction on Count Two was void under *United States v. Davis*, 139 S. Ct. 2319 (2019), and/or *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), which had held void the residual clause definition of "crime of violence" as used within various firearms statutes. Rodriguez argued that the offense of participating in a racketeering conspiracy could not otherwise—that is, by its elements—qualify as a crime of violence. That argument, the Court held, could not secure Rodriguez relief, because § 924(c) applies to firearms possession in connection with either a "crime of violence or a drug trafficking crime." Rodriguez's firearms conviction on Count Two had been based on a narcotics conspiracy as well as the racketeering conspiracy, and *Davis*, although limiting the scope of the term "crime of violence," did not limit § 924(c)'s application to narcotics offenses. *See* 2255 Dec'n at 2–3 (citing *United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016)).

Rodriguez had, second, argued that his conviction was unlawful in light of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. That statute reduces, in some circumstances, the mandatory length imposed for a second, or stacked, conviction under § 924(c). *See* First Step Act of 2018 § 403(a). That argument could not secure Rodriguez relief, either, for two reasons. First, the statute, enacted after Rodriguez was sentenced, was not retroactive to offenses that were final at the time of its enactment. Second, even if the statute permitted a lesser sentence for these violations, the Court at sentencing had stated that, given the gravity of the crimes, the Court would have imposed the same sentence as an application of the § 3553(a) factors. *See* 2255 Dec'n at 4.

### C.       Compassionate Relief Motion

On May 18, 2021, Rodriguez, *pro se*, filed a motion for compassionate release, pursuant

to 18 U.S.C. § 3582(c)(1)(A)(i), predominantly based on medical risks presented to him by the

COVID-19 pandemic.  Dkt. 1195.  On April 13, 2022, after being reappointed to assist

Rodriguez and after a series of extensions, *see, e.g.*, Dkt. 1206, 1210, 1218, court-appointed

counsel submitted a letter-memorandum in support of Rodriguez's motion.  Dkt. 1250.  On April

20, 2022, the Government submitted an opposition.  Dkt. 1251 ("Gov't Mem.").

## II.     Discussion

### A.       Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

the defendant's facility," the Court may reduce such defendant's sentence if it finds that

"extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).

The defendant bears the burden of proving he is entitled to compassionate release.  *See United*

*States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased

punishment, he or she has the burden of showing that the circumstances warrant that decrease.");

*United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29,

2010).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate

release proceedings; it required the BOP to seek such release on their behalf.  *United States v.*

*Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021).  However, "[a]s part of the First Step Act

of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. It does not apply "to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought by an imprisoned defendant and not the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.       Analysis**

Rodriguez, age 34, seeks compassionate release, on the basis of his underlying medical conditions. These are hypertension, cardiovascular disease, diabetes, asthma, and obesity. He has had COVID-19 once. He contends that he is more likely to contract COVID-19 while incarcerated in close quarters with others; if he contracts COVID-19 a second time, particularly a "more virulent" strain, such could expose him to a heightened risk of death; and such a risk would be higher if the BOP medical staff did not attend to his needs. Def. Mtn. at 3–7. He further argues that, should the Court find exceptional and compelling circumstances, non-medical factors favoring a reduced sentence would include that (1) he has tried to make productive use of his time in prison by engaging in work assignments and educational courses; (2) he represents that he has a release plan, which would entail living with his paramour in her home in the Bronx, securing employment, and remaining sober; and (3) the First Step Act eliminated the "stacking" provision for convictions under 18 U.S.C. § 924(c). *Id.* at 5–7.

The Court denies Rodriguez's motion, for two independent reasons.

*First*, the Court does not find extraordinary and compelling circumstances sufficient to justify a reduction of sentence. The anchor of Rodriguez's argument is that COVID-19 presents a potential risk to his health, giving his underlying health conditions that heighten the risks presented by COVID-19.

Rodriguez's motion, however, strikingly ignores a central fact: He is vaccinated. (His initial bout with COVID-19 predated the availability of vaccines: Rodriguez's case was confirmed on January 11, 2021; he was asymptomatic; his case was "resolved" on January 21, 2021; and Rodriguez received his first vaccine two months later, on March 23, 2021. *See* Def. Mem. at 4 n.4; Gov't Mem. at 2 (citing BOP medical records). Rodriguez is also presumably eligible for booster shots.

6

The Centers for Disease Control has opined that the vaccines authorized for use in the United States have been shown to be efficacious and effective against COVID-19, including against severe disease, hospitalization, and death. *Benefits of Getting a COVID-19 Vaccine*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last accessed Apr. 26, 2023). As many courts, including this one, have noted, given the efficacy of such vaccines against severe illness, hospitalization, and death, fully vaccinated inmates, even those with underlying health conditions relevant to COVID-19, are hard-pressed, barring truly unusual circumstances, to claim that the risk of contracting COVID-19 presents an extraordinary and compelling circumstance. *See, e.g.*, *United States v. Gonzalez-Casillas*, No. 07 Cr. 527-1 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022) (denying release request where defendant had not shown himself more vulnerable to COVID-19 than average inmate at his facility, FCI Butner, had been vaccinated, and had previously contracted the virus and recovered); *United States v. O'Bryant*, No. 16 Cr. 0317-3 (PAE), 2022 WL 17168192, at *3 & n.1 (S.D.N.Y. Nov. 22, 2022) (denying release request where record did not reflect that defendant faced greater risk from COVID-19 than the average inmate and had been vaccinated); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (denying release request where defendant had been vaccinated, making him "no longer at high risk for severe illness caused by COVID-19").[1] More

---

[1] That Rodriguez's initial bout with COVID-19 was asymptomatic and resulted in BOP medical personnel deeming his case "resolved" 10 days after he was confirmed to have contracted COVID-19, also weighs against a finding that his circumstances are extraordinary and compelling. *See, e.g.*, *United States v. Hardy*, No. 11 Cr. 629-5 (CS), 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) ("This Court and others have declined to find 'extraordinary and compelling circumstances' in cases where a defendant has a prior COVID-19 diagnosis."); *O'Bryant*, 2022 WL 17168192, at *3 & n.1 (same); *United States v. Delorbe-Luna*, No. 18 Cr. 384 (VC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.").

generally, Rodriguez's motion, although acknowledging that COVID-19 "does not seem to present the firestorm that it did at its zenith," Def. Mem. at 5, downplays the present state of the pandemic in repeatedly invoking the risk to Rodriguez of severe sickness and death, *see, e.g., id.* at 4–5.  In the months immediately after the pandemic struck in March 2020, numerous courts, including this one, found or assumed extraordinary and compelling circumstances to exist where a defendant's underlying respiratory or other medical conditions exposed them to a heightened risk of death or grave suffering from COVID-19, which was then taking lives on an alarming scale.[2]  But today, with the benefit of vaccines and deeper medical knowledge and experience as to the contexts in which the pandemic presents a grave threat to health, a more substantial showing must be made to establish extraordinary and compelling reasons so as to secure relief, as the case authority above reflects.  Rodriguez has not made such a showing.  The Government notes, as of its letter, Butner Medium II FCI had no confirmed cases of COVID-19 among inmates or staff.  Gov't Mem. at 2 (citation omitted).  As of the filing of this order, the facility had 10 confirmed active cases among inmates, out of approximately 120 confirmed active cases across BOP facilities nationwide.  *See BOP COVID-19 Statistics*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed Apr. 26, 2023).  The number of cases at Butner Medium II does not alter the Court's conclusion that there are no

---

[2] *See, e.g., United States v. Wilson*, 16 Cr. 317-17 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, 469 F. Supp. 3d 175, 180 (S.D.N.Y. 2020) (same); *United States v. Brown*, 467 F. Supp. 3d 209, 213 (S.D.N.Y. 2020) (same); *United States v. Jasper*, No. 18 Cr. 390-18 (PAE), 2020 WL 1673140, at *2 (S.D.N.Y. Apr. 4, 2020) (finding "unusually compelling" application for compassionate release of defendant with an immune-inflammatory disease who had served all but 36 days of a four-month sentence).

extraordinary and compelling circumstances justifying a reduction of sentence, as Rodriguez, for the reasons stated, has not made a sufficient showing of the particular risk posed to him as required under current case law.  However, the Court will entertain an application by Rodriguez for the Court to direct his transfer to a facility with lower COVID-19 case rates, should he be so inclined.

*Second*, even assuming extraordinary and compelling circumstances existed, the § 3553(a) factors would not and could not justify a reduced sentence.

The parties here negotiated a plea agreement that mandated a specific sentence: 30 years' imprisonment.  And at sentencing, the Court expanded on why, even if that sentence had not been mandatory, the § 3553(a) factors demanded a sentence of such length.  *See* Dkt. 950 at 29 (stating that such a sentence was "richly warranted" for Rodriguez's having "killed Brandon Howard . . . in cold blood"); *id.* at 32 (noting Rodriguez's involvement "in a gang assault that left a person hospitalized," his having "shot a rival drug dealer in the leg," and his having been "one of the top two" in the gang).  Indeed, the Court noted that a sentence "longer than 30 years would also have been reasonably justified given what you did." *Id.* at 29.  The Court reiterated that assessment in August 2020, in denying Rodriguez's § 2255 petition.  *See* 2255 Dec'n at 4.

The Court's assessment remains the same today.  Rodriguez murdered another human being, engaged in several other acts of brutal retaliatory violence, and committed these acts in the service of a vicious drug-dealing gang that terrorized an apartment complex.  These facts alone implicate, on a high order, various § 3553(a) factors, including the interests in just punishment, the promotion of respect for the law, specific deterrence, and the protection of the public.

9

As for Rodriguez's invocation of the First Step Act, it is highly unpersuasive.  The parties here negotiated an unusual plea agreement with the goal of achieving a specific sentence: 30 years' imprisonment.  For Rodriguez, who was facing a potential mandatory life sentence if convicted of murder in aid of racketeering, that agreement effectively capped his sentencing exposure.  That Congress has since revised the mandatory consecutive sentence for a second such count does not affect the just and reasonable sentence for Rodriguez.  Had the sentencing regime the First Step Act put in place for firearms offenses existed at the time of Rodriguez's guilty plea, there is every reason to assume that the parties would have negotiated alternative plea terms aimed at achieving a similar outcome.  And, based on the Court's assessment at sentencing, there is every reason to assume that the Court, exercising its discretion, would have imposed a sentence of at least 30 years' imprisonment.

For these reasons, the Court denies Rodriguez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: May 3, 2023
New York, New York

10